NATIONWIDE MUTUAL INSURANCE COMPANY ET, PLAINTIFFS-APPELLANTS, *v.* PEERLESS INSURANCE COMPANY ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26385.   Decided November 21, 1963.

*Messrs. Arter, Hadden, Wykoff & Van Duzer, Messrs. William S. Burton & Daniel C. Schipfer*, of counsel, for plaintiffs-appellants.

*Messrs. Hauxhurst, Sharp, Cull & Kellogg, Messrs. Clarence L. Mollison, Thomas A. Dugan*, of counsel, for defendant-cross-appellants, Peerless and Interstate.

*Mr. Eugene Bleiweiss*, for defendant-appellant, Floyd Thorpe.

SKEEL, C. J.  This appeal comes to this court upon questions of law from a judgment entered for the defendants on plaintiffs' petition and for the defendant cross-petitioners, except as to the judgment that plaintiff's driver was not covered by the Nationwide liability policy of insurance.

The petition of the plaintiffs was one seeking a declaratory judgment as to the rights and liability of the respective parties under a comprehensive Family Liability and Automobile Combination Insurance Policy issued by Nationwide to the plaintiffs, Independent Trucking and Pahys Freight Lines, Inc., respectively, and as to a surety bond issued by defendant Peerless Insurance Company on behalf of defendant Interstate Motor Freight System, Inc. and filed with the Public Utilities Commission as provided by law.

Interstate Motor Freight System, Inc. is the holder of a certificate of public convenience and necessity issued by the Public Utilities Commission of Ohio permitting transportation of freight for hire and as a common carrier over the public roads of this state within the territory and upon the routes designated.  Independent Trucking Company and Pahys Freight Lines, Inc. conduct a local cartage business under circumstances that do not require a P. U. C. O. certificate and under contracts with and for other trucking concerns holding P. U. C. O. certificates.  These companies did not have P. U. C. O. certificates, the Pahys Co. using, when necessary, the permit of "C. O. Smith" or the permit of a P. U. C. O. carrier with which it had contracted to carry goods.  There was a contract between Independent Trucking Company and Interstate Motor Freight System, Inc. in force at the time of an accident hereafter described which, in part, provided:

"* * * To be responsible as an 'Independent Contractor' but only to the extent of the legal liability of the carrier for loss or damage sustained by carrier on account of (a) injury to or death of persons, loss of or damage to property caused by or resulting from the negligent acts of contractor, or any of contractor's agents, servants or employees, in performing any of the services or duties on the part of contractor to be performed as herein provided. * * *."

There was no contract between "Interstate" and Pahys.

Interstate Motor Freight System, Inc. contracted with The Williamson Company of Cincinnati, Ohio, to ship a "Moncrief" house furnace from Cincinnati to Ashtabula, Ohio. Interstate transported the furnace from Cincinnati to its warehouse in Cleveland. Pursuant to Interstate's contract with "Independent," Independent acting for itself, and "Pahys" took delivery of the furnace from Interstate Warehouse in Cleveland and delivered it to Moncrief Heating and Supply Co. in Ashtabula. In the process of unloading the furnace, Floyd Thorpe, an employee of the Moncrief Heating and Supply Co. of Ashtabula was injured. He brought an action in Cuyahoga County against Independent Trucking Co., Interstate Motor Freight System, Inc. and Pahys Freight Lines, Inc., seeking damages for his alleged injuries claimed to have been the proximate result of the alleged acts of negligence in making the delivery of the furnace.

There is some confusion in the record as to the equipment used by Independent and/or Pahys to make the delivery and as to which one of these trucking organizations employed the driver. The conclusion that these two companies were joined in a joint venture in making delivery of the furnace is clearly supported by the evidence. There is, likewise, no dispute but that the driver of the truck delivering the furnace and whose alleged acts of negligence in making the delivery are claimed to have proximately caused the injuries to the plaintiff, Floyd Thorpe, in the negligence action, was employed by Independent and Pahys to carry out the joint enterprise. The management of the shipment from Cleveland to Ashtabula was, therefore, under the exclusive control of Independent and Pahys and accomplished by one of their employees under their exclusive direction. In carrying out this delivery, Independent and Pahys were independent contractors and, were it not for the fact that the mission to be accomplished involved the moving of freight under circumstances within the jurisdiction of the Public Utilities Commission of Ohio, they, Independent and Pahys, would be solely responsible for the negligence of their employee and for such negligence no legal liability could be asserted against Interstate. In all events, such liability as may be claimed against Interstate is for the protection of members of the pub-

lic injured by a truck operation in carrying out a delivery of freight permitted under a P. U. C. O. Certificate or a motor transportation company working under a contract with a motor transportation company holding a P. U. C. O. certificate in a transaction coming within the jurisdiction and under the supervision of the Public Utilities Commission. The provisions guiding supervision of public transportation companies, as defined by Section 4921.02, Revised Code, cannot be permitted to affect the rules of common law liability for negligent conduct any further than is necessary to accomplish the purposes of Chapter 4921, Revised Code. That purpose in this case is to protect the interests of the public against loss sustained by reason of death or personal injury or damage to property occasioned by the negligence of a carrier coming within the jurisdiction of the commission or by the negligence of its independent contractors.

Section 4921.03, Revised Code, entitled "Policy" dealing with the trucking industry in Ohio, is concerned with controlling competition and declaring fair prices that may and must be charged by permit or license holders in the transportation industry and is in the interest of providing adequate public services for the transportation of persons and property within the state. Such control of the industry is not for the purpose of subsidizing the financial stability of transportation companies, large or small, by insurance or bond requirements. Any attempt to provide subsidies to stabilize competing carriers would require legislative action directing the use of public funds for that purpose. The cases cited by the parties support this conclusion as the proper interpretation of Section 4921.03, Revised Code. The section of primary importance, dealing with the issues in this case, is the first paragraph of Section 4921.11, Revised Code. It provides:

"No certificate of public convenience and necessity shall be issued by the public utilities commission to any motor transportation company until it has filed with the commission a liability insurance certificate, policy, or bond satisfactory to the commission in such sum and with such provisions as the commission deems necessary adequately to protect the interests of the public having due regard for the number of persons and

amount of property affected. Such liability insurance certificate, policy or bond shall insure such company against loss sustained by reason of the death of or injury to persons and for loss of or damage to property resulting from the negligence of such company.''

The claim that the word ''insure'' in the second sentence of this paragraph is intended to mean that a ''bond'' (when issued under the provisions of this section) as there used, requires the obligor of the bond to pay the obligee any loss he is required to pay to an injured third person, occasioned by his negligence or that of his subcontractor, is to make the use of the term ''bond'' completely meaningless. Providing liability insurance is one method of complying with the provisions of this section and filing a ''bond'' to protect the interests of third persons (members of the public) under the circumstances, as defined in the act, is another method of compliance clearly separate from that of providing a casualty insurance policy. When used as these terms are used in this section, ''liability insurance'' means that the insurer will pay the obligation coming within the terms of the policy of the insured. Both the insured and the third person, whose claim for damage is covered by the terms of the policy, are protected by the insurance contract. A bond, as intended under this section, requires the obligor to pay the default of the obligee with a right of retribution from the wrongdoer where the obligation of the obligee is secondary to that of the actual wrongdoer.

We come, therefore, to a consideration of the relationship of the several parties as to their primary and secondary liability for any damage found due to Thorpe in his action for personal injuries arising from the alleged negligence of Independent's employee in making delivery of the furnace in Ashtabula.

As to plaintiff trucking companies (Independent and Pahys), their driver who is charged with committing the acts of negligence, would be primarily liable to the injured party if his negligence is established as a proximate cause of plaintiff's injuries. The plaintiff trucking companies would be secondarily liable if their employee was acting within the scope of his employment when the negligent acts which were the proxi-

156

mate cause of the injury and damage claimed were committed. In that event, Nationwide, the insurer of the trucking companies, would be obliged to pay the established damages. The trucking companies, were it not that they were protected by Nationwide, could seek reimbursement from the driver, but such right would not extend to Nationwide because the driver was covered under the Nationwide policy.

Under the rules of common law neither Thorpe nor the plaintiff trucking companies, under the admitted facts in this case, could seek damages or reimbursement from Interstate. Any action by Thorpe against Interstate would have to be based on the provisions of Chapter 4921, Revised Code, which, if such action were successful, would vest Interstate, under its contract with Independent and because its liability would be secondary to that of the truck driver and his employer, with the right of seeking reimbursement from Independent and Nationwide. The only involvement of Peerless would be that in the event Interstate was found liable to Thorpe and was unable to pay such judgment, it, Peerless, would be required to make good Interstate's obligation to Thorpe in which event Peerless would be vested with the right to seek reimbursement from the plaintiff trucking companies and Nationwide.

Since we have reached this conclusion, the judgment of the Court of Common Pleas for the defendants is affirmed as to the issues presented by the plaintiffs' petition. We, however, reverse the court's conclusion, against the claim of defendants by their cross-petition, that the driver of the equipment used in making delivery of the furnace, admittedly insured by Nationwide, whether owned and operated by Independent or Pahys, was not covered by Nationwide's policy. The policy, by its terms, extends coverage to any person operating the vehicle covered by the policy with the permission of the named insured. Final judgment is, therefore, entered for the de fendants on their cross-petition.

ARTL and CORRIGAN, JJ., concur.