CONSOLIDATED SYSTEMS, INC., et al.,
Appellants,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

No. 25996.

United States Court of Appeals
Fifth Circuit.

May 23, 1969.

Bernard C. Pestcoe, Hollander & Pestcoe, Miami, Fla., for appellant.

John T. Bond, Miami, Fla , for Consolidated Systems, Inc.

L. N. Preddy, Preddy, Haddad & Kutner, Miami, Fla., for Alterman Transport Lines.

Samuel J. Hannon, Walter Ernest Mackoul, Richard M. Gale, Miami, Fla., for Citizens Cas. Co.

Robert M. Sturrup, Hollywood, Don R. Livingstone, Richard B. Adams, Dean, Adams, George & Wood, Miami, Fla., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

THORNBERRY, Circuit Judge:

█ In the most general terms, the question presented is whether one insurer can relieve itself of the duty to provide coverage for its own insured by shifting that duty to another insurer even though the other insurer never made itself a party to any instrument purporting to cover the insured. The subsidiary issues and underlying facts are not so easily explained. Allstate, the insurer seeking to be relieved and plaintiff in this declaratory judgment suit, provided insurance for Consolidated Systems, a trucking company and one of the defendants-appellants herein. In February, 1964, Consolidated leased a tractor-trailer unit to Alterman Transport Lines, a common carrier by motor vehicle and also a defendant-appellant herein, so that Alterman might haul certain commodities in a single trip from Chicago to Miami. In the course of the trip and while on a Florida highway, the driver of the truck had a collision with an automobile driven by John Maguire. Maguire filed a personal injury suit in a Florida court against Consolidated, Alterman, and the driver. Allstate, Consolidated's insurer, made demand upon Citizens Casualty, the alleged insurer of Alterman and last of the defendants-appellants, to undertake the defense of both Alterman and Consolidated, but Citizens refused. Allstate refused to defend Alterman but proceeded with a defense of Consolidated. The state court suit was finally settled for $16,000 with Allstate and Alterman each paying half. In the federal suit, Allstate sought a declaratory judgment against Consolidated, Alterman, and Citizens that it had no duty to defend Alterman or Consolidated and that Citizens had wrongfully refused to provide the defense. The federal district court granted summary judgment for Allstate, thereby allowing recovery by Allstate against Citizens of the $8,000 settlement paid to Maguire, of costs and attorneys' fees expended in settling the state court suit for Consolidated, and of costs and attorneys' fees incurred in the federal suit for declaratory judgment. On this appeal, Consolidated, Alterman, and Citizens take the position that Citizens provided no insurance to Consolidated, that Allstate was the primary insurer of Consolidated, and that the duty to defend Consolidated rested solely with Allstate. No question is raised as to who was bound to defend Alterman, Alterman being content to assume the burden itself. We have concluded that the summary judgment for Allstate was erroneous.[1]

---

1. The court's ruling on Allstate's complaint rendered Citizens Casualty liable for the amount of the settlement plus costs and attorneys' fees, but that was not the end of the matter. On the basis of an indemnity agreement between Citizens and Alterman, the court held that Alterman was obligated to reimburse Citizens for the amount of the settlement owing from Citizens to Allstate ($8,000) plus costs and attorneys' fees connected with Allstate's defense of the state court suit. Liability for costs and attorneys' fees connected with the federal suit for declaratory judgment remained with Citizens because the court found that the indemnity agreement did not contemplate reimbursement by Alterman of expenses incurred by Citizens as a result of its wrongful refusal to defend a suit. Nor was this the end of the matter. The settlement amount paid by Allstate plus costs and attorneys' fees connected with the state court suit reverted from Alterman to Consolidated by operation on a "save harmless clause" in the motor vehicle lease agreement between Alterman and Consolidated. Thus, the net effect of the judgment below was to saddle Consolidated, Allstate's insured, with all of the liability except federal court expenses which remained with Citizens. Of course, Allstate has no interest in the operation of either the indemnity agreement between Citizens and Alterman or the "save harmless clause" in the lease between Alterman and Consolidated, but Citizens attacks the ruling that excepted federal court expenses from its indemnity agree-

The basis for Allstate's denial of primary coverage to its insured lies in a provision of the Allstate-Consolidated insurance contract:

> * * * however, with respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, *the insurance shall be excess insurance over any other valid and collectible insurance.* (emphasis added)

Since the accident involved a vehicle under lease from Consolidated to Alterman, Allstate has from the outset taken the position that it was an excess insurer and as an excess insurer had no duty to furnish a defense for Consolidated in the state court suit filed by Maguire against Consolidated and Alterman.[2] Certainly the excess-coverage provision was a relevant consideration for the parties to the insurance contract since the accident involved a vehicle under lease from Consolidated, but that provision does not mean that in any situation involving a vehicle under lease from the named insured, Allstate is automatically relieved of the duty to provide primary coverage and defend actions brought against the insured. The provision says

and means that Allstate will be the excess insurer *if there is another valid insurance policy on which Consolidated can collect.* Where there is no valid insurance policy on which Consolidated can collect, it logically follows that Allstate must give its insured primary coverage. Thus, in this case involving a vehicle leased from Consolidated to Alterman, the question to be resolved is whether Alterman had insurance from Citizens that would provide Consolidated with primary coverage for the accident. If not, then the judgment shifting the costs incurred by the primary insurer from Allstate to Citizens cannot stand.

■ To explain the basis for the trial court's decision, it is necessary to adduce more of the stipulated facts. Alterman had a certificate of public convenience and necessity from the Interstate Commerce Commission permitting it to operate motor vehicles on Florida highways in the course of making interstate shipments. Consolidated did not have such a certificate and could not have made the shipment in question. Pursuant to ICC regulations for motor carriers, 49 C.F.R. § 174.1–.2, Citizens Casualty, acting as surety for Alterman, filed with the ICC a $25,000 bond obligating the surety to stand behind any judgment recovered against Alterman

ment. Also, Consolidated attacks the "save harmless clause" between itself and Alterman as being void and of no legal effect. Because we conclude that Allstate had no right to look to Citizens to provide primary coverage for Consolidated, it will be unnecessary for us to consider the effect of the two indemnity agreements. By our decision, Citizens' liability to Allstate is eliminated and any question as to how much of the liability passes from Citizens to Alterman to Consolidated becomes moot.

2. Stated another way, the theory of Allstate's suit for declaratory relief is that the primary insurer rather than the excess insurer owes the insured a defense and that it was an excess insurer under the facts of the case. Citing our decision in American F. & C. Co. v. Pennsylvania T. & F. M. Cas. Ins. Co., 5th Cir. 1960, 280 F.2d 453, appellants urge, *inter alia*, that this legal theory provides no basis for

declaratory relief. In the *Pennsylvania Threshermen* case, an insurer filed suit in federal court seeking a declaration that it was the excess insurer under the facts of the case and therefore had no duty to defend its named insured. This suit was filed before the damage suit in state court had ever been tried and before anyone had paid or become legally liable to pay. 280 F.2d at 457. We held that where an insurer has a contractual duty to defend its named insured, it cannot seek judicial relief from that duty until it has actually undertaken a defense and been required to make payment. 280 F.2d at 459. In the case at bar, Allstate had undertaken a defense for Consolidated, incurred costs and legal fees, and paid $8,000 in settlement of the damage suit before the declaratory decree was entered by the court below. Therefore, the controversy had crystalized more in this case than it had in *Pennsylvania Threshermen.*

"for bodily injuries to or death of any person resulting from the negligent operation, maintenance or use of motor vehicles * * * or for loss of or damage to property of others." The certificate of public convenience and necessity together with the bond satisfied ICC requirements, but in order to make interstate shipments over Florida highways, Alterman had to satisfy requirements of the Florida Public Service Commission as well. Under Florida Statutes Annotated § 323.28, an interstate transportation company must obtain a certificate of registration from the state commission in order to make shipments over Florida's public highways. The statute says that these certificates will be routinely granted so long as the motor carrier has a bond or insurance to provide protection for third parties.[3] Alterman could have satisfied Florida's requirement of a bond or insurance by filing proof of the bond filed by Citizens with the ICC, but instead Citizens filed with the state commission a certificate of insurance representing that all equipment operated by Alterman in Florida was insured by Citizens under its automobile public liability policy MT—225209. The certificate of registration and certificate of insurance entitled Alterman to make interstate shipments over Florida highways.[4]

Acting in Alterman's behalf, then, Citizens filed a bond with the ICC and a certificate of insurance with the Florida Public Service Commission. These are the only possible sources of insurance coverage for Consolidated that would afford relief to Allstate. The bond, however, represents nothing more than an agreement by Citizens to act as surety for liability incurred by Alterman, the principal. It is not an insurance policy, does not require Citizens to defend Alterman in damage suits, and does not purport to cover Consolidated or any party other than Alterman. The certificate of insurance filed with the state commission is a different matter because it represents that Alterman equipment used in Florida is covered by a Citizens' automobile public liability policy. But, as all parties must concede, the problem here is that the Citizens' policy referred to in the certificate—policy # MT—225209—does not exist and was never issued by Citizens. There is a certificate of insurance on file with the Public Service Commission but no actual insurance contract between Citizens and Alterman.[5] Needless to say, the absence

3. Florida Statutes Annotated § 323.28(3):
   Applications for certificates of registration when properly filed on forms provided by the commission will be granted as a matter of course, and continued supervision of interstate carriers will be limited to the control of routes traveled, type, weight, size and method of operation of motor vehicles, proper accounting and payment of the compensatory road tax required by law and the giving of a bond or insurance to provide for protection of third parties from injuries due to negligence of interstate operators in the use of the highways and other police regulations required by law and rules and regulations of the commission. No cargo insurance will be required. Proof that bond or insurance is filed with the interstate commerce commission adequate to protect the operation on the highways of this state together with a description of such bond or insurance will be accepted in lieu of said bond.

4. Appellants contend that the certificate of insurance filed by Citizens pursuant to Florida Statutes Annotated § 323.28 pertains to Alterman's intrastate activities only and has no relevance to the interstate shipment here. But the statute plainly applies to interstate shippers and shipments and the certificate of insurance filed pursuant to the statutory requirement is a relevant consideration. It is generally recognized that a state may require an interstate or intrastate motor carrier to file a bond or insurance as an assurance of financial ability to pay damages rising out of its operations and that such a requirement is a valid exercise of the state's police power. 7 Appleman, Insurance Law and Practice § 4461 (1962).

5. The deposition of an Alterman executive indicates that Citizens and Alterman never contemplated the issuance of an insurance policy because Alterman is self-insured. The parties merely had a business

of a policy means there is no way to determine what the limits of liability would have been or whether the policy would have extended coverage to Consolidated, lessor of the vehicle in question. Since Citizens did not issue an insurance policy and its ICC bond did not purport to cover any party other than Alterman, it is indeed a strain to say that Citizens provided coverage for Consolidated. The trial judge created primary insurance coverage, however, by invoking estoppel. He held that Alterman and Citizens were "estopped to deny the existence of such primary insurance coverage for the protection of the public in the amount of $25,000." Though he referred to "primary insurance coverage," his further reference to the $25,000 limit indicates that he had in mind the bond on file with the ICC.

The question raised by this conclusion of law is whether Citizens' filings with the ICC and the Public Service Commission, either or both, constitute representations of the existence of insurance which estop Citizens from denying primary coverage to Consolidated. Preliminarily, we focus on the fact that the party asserting the estoppel is Allstate, not the person injured in the collision. We make this point because we would clearly have a different case if this were a suit brought by the injured person, if Alterman were judgment proof, if a bond were not on file with the ICC, and if Citizens denied liability to the injured party on the ground that it never issued the insurance policy referred to in the certificate. In this hypothetical situation, the injured person could argue with considerable force that the public relied on the existence of insurance attested to by Citizens and that Citizens was estopped to deny liability since Alterman would never have made

the trip resulting in a collision if the certificate had not been filed. But in the case actually before us Allstate is asserting that Citizens is estopped to deny the existence of insurance covering Consolidated. Whereas the Florida citizen injured in a collision with an Alterman vehicle would have little difficulty arguing as against Citizens that the public relied on the representation that Alterman had insurance, reliance by Allstate on other insurance for Consolidated is not so easily perceived. Yet if the plea of estoppel is to be accepted, Allstate must somehow show that it reasonably relied on the existence of another insurance policy extending primary coverage to Consolidated. Under Florida law, the party who would invoke estoppel must show reliance. Miami Gardens v. Conway, 102 So.2d 622, 626 (Fla.1958); Macina v. Magurno, 100 So.2d 369, 372 (Fla.1958); Jarrard v. Associates Discount Corp., 99 So.2d 272, 278 (Fla. 1957).

Counsel for Allstate suggests that in the case of vehicles leased by Consolidated to another party, Allstate assumed the lessee would have insurance extending primary coverage to Consolidated and therefore reduced its premium charge to Consolidated for leased vehicles. Stated another way, the argument is that in the case of leased vehicles, Allstate assumed it would always be the excess insurer because the lessee would always have other valid and collectible insurance for Consolidated; on the basis of that assumption, Allstate reduced its premium charge for leased vehicles. According to Counsel's interpretation of certain deposition testimony, Allstate's premiums were calculated on the basis of Consolidated's monthly gross receipts. Each month, Consolidated reported 100% of gross receipts from shipments

arrangement whereby Citizens made filings in Alterman's behalf with various state commissions so that Alterman might secure legal authority to use the highways in those states. Alterman paid a fee for the filings and kept certain collateral on deposit with Citizens to cover any liability

Citizens might incur as a result of the filings. In the case of the filing with the Florida Public Service Commission, it is not clear why Citizens did not prove up the bond on file with the ICC rather than make reference to a fictitious insurance policy.

it made itself and premiums were calculated on the basis of that amount, but it reported just 15% of gross receipts from leased vehicles because as to those vehicles it had only excess coverage. Accepting the facts as counsel presents them and assuming that Consolidated paid lower premiums on leased vehicles by reporting a lower percentage of gross receipts on all of them, we are nevertheless unable to agree that Allstate justifiably relied on the existence of other insurance for Consolidated in every leasing situation. We do not agree that Allstate can establish reasonable reliance on the existence of another policy extending coverage to Consolidated by showing that it charged a lower premium for the leased vehicle involved in this case and for all leased vehicles.

Regardless of what premiums it charged for leased vehicles, Allstate obligated itself by the terms of its policy to provide primary coverage on leased vehicles if there were no other valid and collectible insurance for Consolidated. It is obvious that Allstate did not make certain it would be an excess insurer of leased vehicles by checking Consolidated's leasing arrangements to determine whether each lessee was insuring Consolidated, or, at least, it is obvious from the record that no such check was made of the lease between Consolidated and Alterman. If a check had been made, Allstate would have discovered there was no insurance. Moreover, it is apparent to us that in the absence of some kind of agreement with the insurer of a particular lessee, Allstate could not reasonably rely on the lessee's having insurance that would cover the lessor. In this case, for example, all Citizens had to do to comply with ICC regulations was file a bond, and it could have complied with the Florida statute by merely proving up the bond to the Public Service Commission. But for the reference in the insurance certificate to a Citizens' insurance policy, the bond filed with the ICC would have been Alterman's only coverage of record for the trip during which the collision occurred. Yet the bond was nothing more than an agreement by Citizens to guarantee liability incurred by Alterman. It was not an insurance policy and could not be construed to extend primary insurance coverage to Consolidated or any other party or to require Citizens to defend Consolidated or any other party. It did not even require Citizens to defend Alterman. Thus, if Allstate had known that Alterman's only actual coverage was the bond, it would have had no reason for assuming that Alterman had insurance covering Consolidated.

As lessor of the vehicle, Consolidated was joined as a party to the suit filed by Maguire in state court. No provision of the bond required Citizens to undertake Consolidated's defense or to pay the settlement paid in Consolidated's behalf; the bond only guaranteed that Citizens would assume Alterman's liability if Alterman were unable to pay. Likewise, even if the insurance policy referred to in the Florida certificate of insurance had been issued, it cannot be said with certainty that such a policy would have made Citizens primary insurer of the leased vehicle with a duty to defend both Alterman and Consolidated. If Citizens and Alterman had entered into an insurance contract, it is possible that the Contract would have made Citizens the excess insurer of vehicles leased by Alterman from another party. That is, it would have been possible for the excess-coverage provision in a Citizens-Alterman policy to be the converse of the excess-coverage provision in the Allstate-Consolidated policy. Whereas Allstate made itself excess insurer of vehicles leased from Consolidated to another party, Citizens might have made itself excess insurer of vehicles leased by Alterman from another party. In this situation, the Florida law is that the excess-coverage provisions are mutually repugnant so that both insurers become primarily liable. Motor Vehicle Cas. Co. v. Atlantic Nat'l Ins. Co., 5th Cir. 1967, 374 F.2d 601, 603 fn. 7; Factory Mut. Liab. Ins. Co. v. Continental Cas. Co., 5th Cir. 1959, 267 F.2d 818;

Continental Cas. Co. v. St. Paul Mercury Fire & Marine Ins. Co., D. Fla.1958, 163 F.Supp. 325. Under Florida law, Allstate would have been required to assume Consolidated's defense. We raise this possibility only to show that in charging lower premiums to Consolidated for leased vehicles, Allstate could not have justifiably relied on Alterman's having primary insurance even if there had been a Citizens-Alterman policy. The charging of lower premiums for leased vehicles must have reflected Allstate's assessment of the over-all insurance picture in the industry rather than an assessment that each particular lessee would carry primary insurance. Not having seen the Citizens' policy nor having made an agreement with Citizens, Allstate simply could not reasonably assume that Citizens would have primary insurance on the leased vehicle.

■ Allstate argues that Citizens should not be allowed to make an after-the-fact determination of whether to provide insurance and what kind of insurance to provide by neglecting to issue the policy referred to in the certificate of insuance while we have already said that Maguire, the injured party, would have a rather compelling argument for estoppel under a different set of circumstances, we do not think that Citizens' misrepresentation, if that it what it was, will give rise to a policy of insurance with a provision for primary coverage of the leased vehicle in the amount of $25,000. Certainly a misrepresentation can result in estoppel being invoked against the guilty party, but the party asserting estoppel must show that by his actions he has changed positions in reliance on the misrepresentation. We have

considered whether Allstate could have reasonably relied on there being a Citizens' policy of primary insurance covering the leased truck and concluded that it could not have so relied. Therefore, there was no contract of insurance by operation of estoppel.[6] Moreover, we have examined the bond, which was the only actual coverage given Alterman by Citizens, and concluded that it cannot be construed to make Citizens the primary insurer of the vehicle with a duty to defend Consolidated. It is just not that kind of instrument. The bond not only fails to provide Consolidated with primary insurance coverage but it also shows that Allstate could not have reasonably relied on there being such coverage by another insurer since the bond could have legitimately been the only coverage of record.

What we hold is that Allstate had no right to look to Citizens for primary coverage of the leased vehicle and a defense of Consolidated in the state court suit.[7] Having explained what we hold, it would perhaps be well to explain what we do not hold. Much is said in the briefs about Alterman's being required by ICC regulations, 49 C.F.R. § 207.4 (4), to assume full legal responsibility for any vehicle under lease to it. Also, much is said about Consolidated's having violated these same regulations by agreeing to hold Alterman harmless for any liability arising out of the lease. We venture not even a guess whether Alterman could be held fully liable for the accident in question on the basis of the regulation or whether Allstate could be relieved of its duty to insure by virtue of Consolidated's having unlawfully agreed to indemnify Alterman. These

---

6. We note that there are numerous judicial expressions to the effect that equitable estoppel cannot be invoked to create a policy of insurance. *See* Wolters v. Prudential Ins. Co., 8th Cir. 1961, 296 F.2d 140; Security Ins. Co. v. White, 10th Cir. 1956, 236 F.2d 215; *see generally* 16A Appleman, Insurance Law and Practice § 9090 (1968).

7. We have assumed for purposes of this opinion that the duty to provide primary

insurance and the duty to defend Consolidated would go hand-in-hand. In holding Citizens liable as primary insurer, the trial judge also held it liable for the costs of Consolidated's defense even though the insurance contract between Allstate and Consolidated required Allstate to defend. We express no view on the correctness of this ruling. See American F. & C. Co. v. Pennsylvania T. & F. M. Cas. Ins. Co., supra fn. 2, 280 F.2d at 459 fn. 11.

matters, *i.e.*, the liabilities of Alterman and Consolidated and the legal ramifications of their liabilities, were not fully developed in the trial court and were not the subject of complete fact findings by the trial court.[8] On this record, we are able to hold only that Citizens did not insure Consolidated and was not obligated to defend Consolidated.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

8. In this connection, see Carriers Ins. Exchange v. Truck Ins. Exchange, 4th Cir. 1962, 310 F.2d 653; Vance Trucking Co. v. Canal Ins. Co., D.S.C.1966, 249 F.Supp. 33.