FARMERS INSURANCE EXCHANGE AND ANOTHER
v. MIDWEST EMERY FREIGHT SYSTEMS, INC.,
AND OTHERS.

215 N. W. 2d 623.

February 22, 1974—No. 44184.

*Jardine, Logan & O'Brien* and *Graham M. Heikes,* for appellants.

*Murnane, Murnane, Battis & Conlin* and *Thomas M. Conlin,* for respondents.

Heard before Knutson, C. J., and Peterson, Todd, and Scott, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

Appeal from a summary judgment in favor of plaintiffs. We reverse.

The facts are before us by stipulation of April 19, 1972:

"That on the 16th day of November, 1968, the plaintiff Alfred A. Turenne was the operator of a 1965 General Motors truck with the permission and consent of the owner, Rentar Trailer

and Container Corporation, a Nebraska corporation, and that it had been leased to Midwest Emery Freight Systems under the terms of a lease which is attached as Exhibit A dated May 15, 1965, and operated on the streets and highways of the State of Minnesota as a motor carrier under the authority of the laws of Minnesota and specifically the rules and regulations of the Public Service Commission.

"The driver of the vehicle, Alfred Turenne, was operating this vehicle while insured pursuant to the provisions of the policy of insurance of the Farmers Insurance Exchange, Los Angeles, California, who insured Alfred Turenne for liability within the terms and provisions of said policy which is attached hereto as Exhibit B, and the owner Rentar Trailer and Container Corporation, leased the truck in question to Midwest Emery Freight Systems, Inc., who in turn was operating it with the permission of the Public Service Commission in accordance with the posting of bond number 695338 of the Seaboard Surety Company, a copy of which is hereto attached and made a part hereof as Exhibit C.

"On November 16, 1968, a collision occurred between a truck owned by defendant Rentar Trailer and Container Corporation, a Nebraska corporation, under lease to defendant Midwest Emery Freight Systems, Inc., an Ohio corporation, and operated by plaintiff Alfred A. Turenne with a vehicle owned by Richard C. Felhaber and operated by Catherine C. Felhaber with Georgia F. Erdos as a passenger.

"Following said accident suit was brought by Richard C. Felhaber and Catherine C. Felhaber and Georgia F. Erdos and Edmund E. Erdos, and ultimately these cases were resolved by payment of judgment by the Farmers Insurance Exchange on behalf of Alfred Turenne in the case of Richard C. Felhaber and Catherine C. Felhaber in the amount of Six Hundred Eighteen and 20/100 Dollars ($618.20), and by settlement in the case of Georgia F. Erdos and Edmund E. Erdos in the amount of Seven Thousand and 00/100 Dollars ($7,000.00) with stipulations of

dismissal entered in both cases in Ramsey County Municipal and District Courts dismissing these actions with agreement by the attorneys for Alfred A. Turenne and Midwest Emery Freight Systems, Inc., an Ohio corporation, and Rentar Trailer and Container Corporation, a Nebraska corporation, to allow the claims of the plaintiffs, Farmers Insurance Exchange and Alfred A. Turenne, in indemnity and the counterclaim of Midwest Emery Freight Systems, Inc., and Rentar Trailer and Container Corporation which are at issue by the amended summons and complaint and answers and counterclaims interposed herein.

"It is stipulated that a tender of defense was submitted on behalf of Midwest Emery Freight Systems, Inc., to plaintiffs Alfred A. Turenne and Farmers Insurance Exchange in each of the previous lawsuits which are the subject of the indemnity claims herein pursuant to letters dated May 9, 1969, and May 26, 1970, which are attached hereto and made a part hereof as Exhibits D and E.

"It is stipulated that on November 16, 1968, at the time and place of the aforesaid accident, Alfred A. Turenne was not in the employ of Midwest Emery Freight Systems, Inc. nor Rentar Trailer and Container Corporation, nor was he performing any errand or service for said Midwest Emery Freight Systems, Inc. or Rentar Trailer Container Corporation at the time of said accident."

The pertinent requirements to be met by motor carriers operating in this state are set forth in the following statutes:

Minn. St. 221.021. "No person shall operate as a motor carrier without a certificate or permit in full force and effect with respect to such operation. Any certificate or permit shall be suspended or revoked upon conviction of violating any provision of sections 221.011 to 221.291 or any order, rule or regulation of the department governing the operation of motor carriers and upon a finding by the court that the violation was wilful, or the department may for good cause, after hearing and upon ten days

notice to the holder thereof, suspend or revoke any permit for a violation of the provision of the sections noted herein or any order, rule or regulation of the department issued pursuant to the provisions of chapter 221."

Minn. St. 221.141. "Before any certificate or permit shall be issued to any motor carrier, it shall secure and file with the department and keep the same at all times in full effect public liability and indemnity insurance in such amount and in such form as the department shall have prescribed, covering injuries and damage to persons or property occurring on the highways, other than the employees of such motor carrier or the property being transported by such carrier, provided that the department shall require cargo insurance for certificated carriers, except those carrying passengers exclusively, and may require any permit carrier to file such insurance when it deems necessary to protect the users of the service. Such insurance shall be subject to cancellation for nonpayment of premiums or withdrawals from service of a vehicle or vehicles covered thereby upon not less than 30 days' written notice to the insured and to the department. Such insurance or bond may from time to time be reduced or increased by order of the department. *The department may, if desired by the applicant, prescribe in lieu of the bond or insurance such other form of security as may be satisfactory.* Failure to maintain any required insurance or security shall void the permit or certificate." (Italics supplied.)

Regulations of the Public Service Commission (formerly the Railroad and Warehouse Commission) expanded upon the language of the statutes above. Among these regulations are the provisions:

PSC 47(a). "Any motor carrier in for-hire service may file a petition with the Commission for authority to be a self-insurer of its public liability and property damage liabilities, pursuant to Chapter 221, M.S.A."

PSC 48. "Insurance companies or bonding companies who file certificates of insurance or bonds with this Commission must

be authorized and registered with the Department of Commerce, Insurance Division, to do business in the State of Minnesota."

The language of the surety bond is unambiguous and provides in part:

"Now, THEREFORE, if the Principal shall pay or cause to be paid every final judgment recovered against the Principal for bodily injury to or the death of any person or loss of or damage to the property of others, sustained while this bond is in effect and resulting from the ownership, operation, maintenance, or use of motor vehicles under the permit issued to the Principal by the Minnesota Railroad and Warehouse Commission (but excluding the loss of or damage to property of the principal and property transported by the Principal designated as cargo), then this obligation shall be void, otherwise to remain in full force and effect."

It is factually important that Turenne's personal vehicle was insured with Farmers Insurance Exchange under a standard public liability policy which contained an "excess" clause providing that said policy would be secondary if Turenne was operating another vehicle that was also insured. In the facts before us, had the carrier been insured under the standard form insurance policy, that policy would have been primary. Therefore, as stated by the trial court:

"* * * The only issue arising between present plaintiffs and defendants is whether plaintiff Farmers Insurance Exchange, under its subrogation agreement with its insured, Alfred Turenne, is entitled to indemnity from the defendants Midwest, Rentar and Seaboard Surety Company on account of the bond filed with the Public Service Commission in lieu of an insurance policy."

In granting plaintiffs' motion for summary judgment, the trial court found that the surety bond filed with the commission was "the equivalent of a standard form automobile liability insurance policy" and that defendants therefore had the primary obligation

to the injured parties. With this we cannot agree. A surety bond is not an insurance policy. To find that the Public Service Commission, in accepting this bond, therefore construes the bond as an equivalent of a "standard form liability policy" providing primary coverage would seem to require the further conclusion that the commission's issuance of an "order for self-insurance" would also place the burden of primary liability upon the carrier. The mere fact that more than one form of security is accepted or provided for in the commission's rules or applicable statutes, either now or in the future, does not effectuate the excess clause of an operator's own personal insurance policy, unless the security is in fact an insurance policy.

We are not persuaded by the argument on behalf of the plaintiff that we can judicially convert a surety bond into a standard insurance policy, nor do the above recited facts, statutes, or rules so convert the bond. The commission's ultimate statutory requirement undoubtedly is for the protection of the public. The commission having accomplished this objective, its actions cannot be determinative of a contractual question between private parties which is not within the intended legitimate scope of its function.

As the language contained therein is unambiguous, we cannot construe the bond as requiring Seaboard Surety to undertake the defense or to pay the settlement. Rather, it merely guarantees that Seaboard would assume Midwest Emery's liability only if the latter were unable to make the payment.[1] The bond must be read as providing merely that guarantee, without the inclusion of the further conditions and ramifications of a regularly issued liability insurance policy.

Accordingly, we must reverse the judgment of the trial court. Reversed.

---

[1] See, Consolidated Systems, Inc. v. Allstate Ins. Co. 411 F. 2d 157 (5 Cir. 1969); Nationwide Mutual Ins. Co. v. Peerless Ins. Co. 93 Ohio L. Abs. 150, 27 Ohio O. 2d 293, 194 N. E. 2d 154 (Ohio App. 1963).

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.