[Civ. No. 24889. Fourth Dist., Div. One. Feb. 11, 1982.]

LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff and Appellant, v.
AGENCY RENT-A-CAR, INC., et al., Defendants and Respondents.

COUNSEL

Nickoloff & Distel and John F. Distel for Plaintiff and Appellant.

Bolton, Hemer & Dunn and Donald H. Moore for Defendants and Respondents.

OPINION

WORK, J.—Lumbermens Mutual Casualty Company (Lumbermens) appeals a judgment in favor of Agency Rent-A-Car, Inc. (Agency) and National Bonding and Accident Insurance Company (National) after requesting the court declare which party had primary coverage for an automobile involved in a collision. The pivotal issue is whether Insurance Code section 11580.9[1] applies to a surety bond filed in compliance with the motor vehicle financial responsibility laws. For the reasons which follow we conclude it does not, and affirm.

### Factual and Procedural Background

The automobile accident involved a car owned by Agency, rented and driven by John Cilmi, and one owned and operated by Marion Lockett. Cilmi and his wife sued Lockett because of personal injuries and property damage. Lockett and her passenger, Tes Marie Thompson, cross-complained for personal injuries and property damage. The Cilmis also filed uninsured motorist claims with their own automobile insurance carrier, Lumbermens, because Lockett was uninsured.

Cilmi had current insurance coverage with Lumbermens, while Agency had an automobile surety bond in the amount of $15,000 with National and was self-insured up to $100,000, after which it had "excess" automobile insurance with Northeastern Fire Insurance Company of Pennsylvania. Consequently, Cilmi tendered defense of the cross-complaint to Lumbermens which, in a classic "Tinker to Evers to Chance" move, tendered both the defense of the cross-complaint and the uninsured motorist claim to Agency. When Agency refused to play ball, Lumbermens filed the case at bench.

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

Lumbermens' policy contains the following hybrid pro rata and excess clause: "If the insured has other insurance against a loss covered by Part One of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, *however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess over any other valid and collectible insurance.*" (Italics added.)

## Discussion

Lumbermens contends National's coverage under its financial responsibility bond is primary under section 11580.9, subdivision (d).[2]

Sections 11580.8[3] and 11580.9[4] reflect a legislative effort to reduce the volume of disputes within this area of primary, excess or sole coverage litigation between the injured parties, insureds and insurers.

[2]Granted, "[i]t is the general rule that courts will give heed to 'primary' and 'excess' insurance provisions of insurance policies. This rule is particularly applicable where the dispute is between two or more insurance carriers and, as here, the rights of policyholders or their accident victims will be unaffected by its application. [Citations.]" (*National American Ins. Co. v. Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 574 [140 Cal.Rptr. 828].) However, here, Lumbermens' policy includes an excess clause providing that insurance for a temporary substitute or nonowned automobile "shall be excess over any other valid and collectible insurance," while National's surety bond is silent in this regard. Accordingly, we look to sections 11580.8 and 11580.9 for guidance.

[3]Section 11580.8 provides: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply, and such public policy is not to be changed or modified by any provision of the Vehicle Code except in those express cases where the requirements of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code apply with regard to a policy of liability insurance certified as provided in Section 16431 of the Vehicle Code."

[4]Section 11580.9 provides: "(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, test-

(*Transport Indemnity Co.* v. *Alo* (1981) 118 Cal.App.3d 143, 147 [173 Cal.Rptr. 394]; *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal. App.3d 521, 524 [149 Cal.Rptr. 562].) It applies to "first-tier" liability, as opposed to "second-tier" responsibility. Within the former, it applies to basic liability coverage where indemnification for direct liability is contractually secured by the insured with the consequence the insurer has no right of reimbursement against the insured-tortfeasor or his estate. Likewise, it applies to one who has satisfied the financial responsibility laws by obtaining a certificate of self-insurance pursuant to Vehicle Code section 16053 (§ 11580.9, subd. (g), superseding *Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678 [158 Cal.Rptr. 207] which held otherwise), thus declaring one's finan-

---

ing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed:

"(1) If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary, and the insurance afforded by any other policy shall be excess.

"(2) If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph (1), the insurance afforded by the policy issued to any person engaged in any of such businesses shall be excess over all other insurance available to such operator as a named insured or otherwise.

"(b) Where two or more policies are applicable to the same loss, and one of such policies affords coverage to a named insured engaged in the business of renting or leasing commercial vehicles without operators, as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or the leasing of any other motor vehicle for six months or longer, it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall be primary and the other policy or policies shall be excess.

"(c) Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on such policy, but shall be excess over all other valid and collectible insurance applicable to the same loss with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary and such policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of such owner, tenant, or lessee while acting in the course and scope of their employment.

"(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies

cial ability to directly respond to potential vehicular liability.[5] However, it does not apply to "second-tier" liability where a party, i.e., a surety, becomes liable only following the establishment of liability on the part of its principal *and* the latter's failure to satisfy that liability. This follows since, by analogy, the bonded principal is nothing more than a "self-insured."

A comparative review of the nature of a surety bond, filed in compliance with the motor vehicle financial responsibility laws, and basic liability insurance lends substantive support to this analysis. █ A surety bond is not an insurance policy. (*Farmers Ins. Exch.* v. *Midwest Emery Frgt. Sys., Inc.* (1974) 298 Minn. 369 [215 N.W.2d 623, 626]; *Consolidated Systems, Inc.* v. *Allstate Insurance Company* (5th Cir. 1969) 411 F.2d 157, 160; 8A Appleman (1981) Insurance Law and Practice, § 4913 at p. 511.) It represents nothing more than "an undertaking to indemnify a person, or the public, against losses resulting from acts of the principal. A surety guarantees payment up to the principal sum. But if losses occur, the surety may recover from its principal." (*Ibid.*) It merely constitutes a guarantee the surety will assume the principal's liability only if the latter is unable to make full payment. It cannot be construed as providing any more, such as the requiring of the surety to undertake the defense or to immediately pay the settlement without the principal's default. (*Farmers Ins. Exch.* v. *Midwest Emery Frgt. Sys., Inc., supra*, 215 N.W.2d 623, 626; *Consolidated Systems, Inc.* v. *Allstate Insurance Company, supra*, 411 F.2d 157, 160; *Nationwide Mutual Ins. Co.* v. *Peerless Ins. Co.* (1963) 27 Ohio

---

affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

"(e) Any insurance policy which, under the terms of subdivisions (a) to (d), inclusive, applies as excess coverage may provide with respect to any loss to which primary insurance is not valid and collectible in whole or in part, such excess policy shall apply only to the extent necessary to provide the insured with coverage limits at least equal to the limits specified in Section 16056 of the Vehicle Code.

"(f) The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in such subdivisions and all named insureds under such policies.

"(g) For purposes of this section, a certificate of self-insurance issued pursuant to Section 16053 of the Vehicle Code or a report filed pursuant to Section 16051 of the Vehicle Code shall be considered a policy of automobile liability insurance."

[5]Indeed, "one who elects to act as a self-insurer ... [should be] bound by all the burdens that would be imposed upon a commercial insurer ...." (8A Appleman, Insurance Law and Practice (1981) § 4912, p. 510.)

Ops.2d 293 [194 N.E.2d 154, 157].) ██ In other words, "[a] liability insurance policy is written for the [financial] protection of the insured. However, a financial responsibility bond does not protect the principal by insuring him against liability. A financial responsibility bond is written for the protection of the motoring public, who may be injured by the principal. If the surety is compelled to make payment for damages caused by the principal, it has the right to seek reimbursement from the principal. The . . . financial responsibility bond, in the present case, expressly provides for reimbursement by the principal. This fundamental difference between insurance and a financial responsibility bond compels this court to find that a financial responsibility bond is not insurance, as that term is used in . . . [Lumbermens' excess clause and section 11580.9]." (*Republic-Franklin Ins. Co.* v. *Progressive Cas. Ins. Co.* (1976) 45 Ohio St.2d 93 [341 N.E.2d 600, 602, 74 Ohio Ops.2d 202].)

## *Disposition*[6]

The judgment is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

---

[6]In light of our disposition, we do not address Agency's remaining contentions.